IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

ROSE M. WISE                                    *

                                                          *

v.                                                       *    Civil No. JFM-02-2323

                                                          *

GALLAGHER BASSET SERVICES, INC.    *

*****

MEMORANDUM

Rose M. Wise brings suit against Gallagher Basset Services, Inc. ("GBS"), alleging

violations of Md. Ann. Code art. 49B, §§ 16, 42[1] and Howard County, Md., Code § 12.208.[2]

Specifically, plaintiff claims that GBS failed to promote her on three separate occasions because

of her race. GBS has moved for summary judgment. For the reasons detailed below, I will grant

---

[1]Md. Ann. Code art. 49B, § 16, in relevant part, provides:
    (a) It shall be an unlawful employment practice for an employer:
    (1) To fail or refuse to hire or to discharge any individual, or otherwise to
discriminate against any individual with respect to the individual's compensation,
terms, conditions, or privileges of employment, because of such individual's race,
color, religion, sex, age, national origin, . . . or disability unrelated in nature and
extent so as to reasonably preclude the performance of the employment . . . .
Md. Ann. Code art 49B, § 42(a) provides:
    In Montgomery County, Prince George's County, and Howard County, in
accordance with this subtitle, a person who is subjected to an act of discrimination
prohibited by the county code may bring and maintain a civil action against the
person who committed the alleged discriminatory act for damages, injunctive
relief, or other civil relief.

[2]The relevant portion of section 12.208 of the Howard County Code provides: "It shall be
unlawful if, because of discrimination, an employer: (1) Discharges a person; or (2) Refuses to
hire a person; or (3) Acts against a person with respect to compensation or other terms and
conditions of employment . . . ." Section 12.208 defines discrimination as "[a]cting or failing to
act, or unduly delaying any action regarding any person because of: Race . . . ."



GBS's motion.[3]

I.

GBS is a third-party administrator that adjusts workers' compensation and liability claims. In February 1992, GBS hired plaintiff as a senior claims representative for its Columbia, Maryland office. The branch manager of the Columbia office was Gale LeSieur. Beth House, a supervisor in GBS's Harrisburg, Pennsylvania office also supervised the Columbia office. Dean Snyder was the area vice president and supervised both Ms. LeSieur and Ms. House.

In October 1999, GBS authorized Ms. LeSieur to hire a new supervisor. Ms. LeSieur failed to advertise the new position as required, but mentioned it at office meetings. GBS considered plaintiff, an African-American, and three white employees, including Bonita Formwalt, for the supervisor position. The applicant pool was eventually narrowed to plaintiff and Ms. Formwalt. No interviews were conducted for the position. After consulting with Ms. House and Mr. Snyder, Ms. LeSieur hired Ms. Formwalt.

In November 1999, GBS informed its employees of Ms. Formwalt's promotion. Plaintiff complained to both Ms. House and Mr. Snyder about being passed over. Plaintiff also began ignoring her fellow employees and would not respond to her supervisors unless asked a direct question. Her behavior allegedly caused a number of GBS employees great distress. In December 1999, Ms. LeSieur met with plaintiff to discuss the promotion. At this meeting, Ms.

---

[3]In her fourth amended complaint, plaintiff includes a claim against GBS for failing to promote her in July 2001. (Fourth Amended Compl. ¶ 6.) GBS contests this allegation in its motion for summary judgment. (Def. Mem. at 17-18.) Plaintiff fails to present any evidence of a genuine issue for trial. In fact, plaintiff fails to even mention the July 2001 promotion in her opposition. As a result, I must grant summary judgment for GBS on the July 2001 promotion claim. Fed. R. Civ. P. 56(e).

LeSieur allegedly told plaintiff that she "wasn't going to be promoted even if a another job became available."

In June 2000, GBS informed employees of another supervisor job at the Columbia branch. Plaintiff and three white employees, including Stephanie Clifford, were considered for the position. All four applicants were interviewed by multiple people, and plaintiff and Ms. Clifford were chosen as finalists. In July 2000, Ms. LeSieur left work for medical reasons. As a result, Mr. Snyder made the final decision regarding the promotion. In August 2000, Mr. Snyder chose Ms. Clifford for the promotion.

In April 2001, plaintiff filed suit against GBS in the Circuit Court for Howard County. The parties engaged in motions practice in Howard County circuit court. In January 2002, the circuit court denied GBS's motion to dismiss and continued the motion for summary judgment until the completion of discovery. In June 2002, after receiving plaintiff's fourth amended complaint, GBS removed the case to this court.[4] Discovery is complete, and GBS's summary judgment motion is now ripe for consideration.

II.

Despite the state-law basis of this action, the parties agree that the three-step proof scheme established in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), controls in this case. See, e.g., State Comm'n on Human Relations v. Washington County Cmty. Action Council, Inc., 59 Md. App. 451, 455-56, 476 A.2d 222, 224 (1984) (applying the McDonnell

---

[4]Plaintiff's original complaint sought $750,000 in damages. In her first, second, and third amended complaints, she reduced her damage request to $75,000. In her fourth amended complaint, she raised the damage request back to $750,000. GBS then sought removal. Plaintiff filed a motion to remand, which I denied.

Douglas framework to a state-law based discrimination action).  Plaintiff has not met her burden

under that scheme.[5]

A.

Under McDonnell Douglas, a plaintiff must first establish, by a preponderance of the

evidence, a prima facie case of discrimination.  To establish a prima facie case of discriminatory

failure to promote, plaintiff must show that: (1) she is a member of a protected class, (2) she

applied for the position in question, (3) she was qualified for the position, and (4) she did not get

the position under circumstances giving rise to an inference of unlawful discrimination.  Brown

v. McLean, 159 F.3d 898, 902 (4th Cir. 1998); Carter v. Ball, 33 F.3d 450, 458 (4th Cir. 1994).

It is relatively easy for a plaintiff to establish a prima facie case of discrimination, Evans v.

Techs. Applications & Serv. Co., 80 F.3d 954, 960 (4th Cir. 1996), and plaintiff has done so

here.

It is undisputed that plaintiff is a member of a protected class, and that she applied for the

October 1999 and August 2000 promotions.  Plaintiff has also demonstrated that she was

qualified for each position.  She was one of two finalists for each position.  Moreover, GBS

employees have stated on numerous occasions that plaintiff was qualified to receive the

---

[5]Plaintiff claims that GBS's failure to promote her in August 2000 should be judged
according to the mixed motive theory of liability. (Pl. Opp'n at 30-31.)  To have a case judged
under the mixed motive theory, a plaintiff must show "evidence of conduct or statements that
both reflect directly the alleged discriminatory attitude and that bear directly on the contested
employment decision." Fuller v. Phipps, 67 F.3d 1137, 1142 (4th Cir. 1995).  The only evidence
of this type plaintiff points to is Ms. LeSieur's December 1999 comment that plaintiff would
never be promoted.  This comment is not direct evidence of a discriminatory attitude.  It is, on its
face, completely race-neutral.  Moreover, the comment was made approximately eight months
before the August 2000 promotion decision.  As a result, I will not analyze the August 2000
promotional opportunity under a mixed motive theory.

promotions. (See Mem. from Snyder to Wise of 12/23/99, Pl. Ex. 4, at 1; Letter from Tixier to

Wise of 5/4/00, Pl. Ex. 1, at 9; Mem. from Kramer to Snyder of 7/20/00, Pl. Ex. 7, at 2-3; Mem.

from Snyder to Neigel of 8/11/00, Pl. Ex. 8, at 1-2; Mem. from Snyder to Wise of 8/24/00, Pl.

Ex. 9, at 1.) GBS argues that plaintiff cannot show this element of the prima facie case because

plaintiff cannot show that she was the most qualified candidate for the promotions. (Def.

Supplemental Mem. at 11-18.) GBS misunderstands plaintiff's burden of proof. Plaintiff only

has to show that she was qualified for the position—not the most qualified—to satisfy this

element of the prima facie case. See Evans, 80 F.3d at 960.

Plaintiff has also demonstrated that she was denied the promotion under circumstances

giving rise to an inference of unlawful discrimination. GBS correctly argues that a plaintiff's

unsupported allegations of racial discrimination are insufficient to establish a prima facie case of

discrimination. See Goldberg v. B. Green & Co., Inc., 836 F.2d 845, 848 (4th Cir. 1988). Here,

however, plaintiff has demonstrated that each promotion was given to a white employee. That

fact alone is sufficient to satisfy the fourth prong of the prima facie case. Carter, 33 F.3d at 458.

B.

Once a plaintiff establishes a prima facie case of discrimination, a defendant must offer a

legitimate, nondiscriminatory reason for not promoting the plaintiff. Texas Dep't of Cmty.

Affairs v. Burdine, 450 U.S. 248, 254 (1981). GBS has offered several legitimate reasons for not

promoting plaintiff. According to GBS, those promoted ahead of plaintiff had better audit

scores, interviewed better, had good interpersonal skills, and were proactive in handling claims.

(LeSieur Aff. ¶ 6; Letter from Tixier to Wise of 5/4/00, Pl. Ex. 1, at 4-5; Mem. from Snyder to

Wise of 12/23/99, Pl. Ex. 4, at 1; Mem. from Snyder to Wise of 8/24/00, Pl. Ex. 9, at 1-2.) These

are legitimate, nondiscriminatory reasons for not promoting plaintiff. See Evans, 80 F.3d at 960

("Job performance and relative employee qualifications are widely recognized as valid, non-

discriminatory bases for any adverse employment decision.").

C.

Once a defendant produces a nondiscriminatory explanation for the failure to promote,

the plaintiff has "the opportunity to demonstrate that the proffered reason was not the true reason

for the employment decision." Burdine, 450 U.S. at 256. When an employer states that an

employee was not promoted because other candidates were more qualified, a plaintiff alleging

racial discrimination can prove that the employer's explanation is false in two ways. Gbenoba v.

Montgomery County Dep't of Health and Human Serv., 209 F. Supp. 2d 572, 577 (D. Md.

2002); see also Dennis v. Columbia Colleton Med. Ctr., 290 F.3d 639, 649 n.4 (4th Cir. 2002).

First, a plaintiff can show that she was actually more qualified than the promoted employee.

Gbenoba, 209 F. Supp. 2d at 577; see also Dennis, 290 F.3d at 649 n.4. Second, a plaintiff can

show that the employer's articulated reasons were not the actual reasons relied on, but rather

created as a "post hoc rationalization for the decision." Gbenoba, 209 F. Supp. 2d at 577; see

also Dennis, 290 F.3d at 649 n.4. In this case, plaintiff cannot show that GBS's explanation for

the promotion decision is false under either method.

1.

In her deposition, plaintiff points to only two attributes that she felt made her more

qualified than the other candidates: (1) she had been with the company longer and (2) had trained

many of the employees at GBS. (Wise Dep. at 24.) These attributes are insufficient to show that

plaintiff was more qualified than the employees promoted ahead of her. First, plaintiff admits

that GBS did not promote individuals based on seniority. (Id. at 171.) As a result, the fact that

plaintiff had been with the company longer than the other candidates did not make her more

qualified for the promotions. Second, the record demonstrates that GBS considered a number of

factors—audit scores, interviews, interpersonal skills, and proactivity—when making its

promotion decisions. (LeSieur Aff. ¶ 6; Letter from Tixier to Wise of 5/4/00, Pl. Ex. 1, at 4-5;

Mem. from Snyder to Wise of 12/23/99, Pl. Ex. 4, at 1; Mem. from Snyder to Wise of 8/24/00,

Pl. Ex. 9, at 1-2.) The fact that plaintiff trained many of the employees at GBS does not mean

that she had better audit scores, interviewed better, had better interpersonal skills, or was more

proactive in her work. Thus, the fact that plaintiff trained many GBS employees does not mean

that she was more qualified for the promotions than the other applicants.

2.

Plaintiff also contends that GBS's articulated reasons for not promoting her were actually

post hoc rationalizations.

a.

Plaintiff first argues that GBS has offered different explanations for not promoting her in

October 1999. According to plaintiff, this is evidence of pretext. (Pl. Opp'n at 18-21.)

Plaintiff's argument fails. Although GBS has offered several reasons for not promoting plaintiff,

the reasons are consistent. They all concern plaintiff's job performance; in fact, they all

consistently concern the same aspects of plaintiff's job performance—audit scores, interpersonal

skills, and proactivity. This is quite different from a case where an employer offers inaccurate,

inconsistent, and belated explanations for hiring a less qualified white applicant. See E.E.O.C. v.

Sears Roebuck & Co., 243 F.3d 846 (4th Cir. 2001).

Plaintiff points to several other "facts" surrounding the October 1999 promotion that she claims are indicative of racial animus. (Pl. Opp'n at 21-22.) None support her claim. First, plaintiff claims that GBS's contention that other candidates interviewed better than plaintiff is false because no interviews were conducted for the October 1999 promotion. Nowhere does GBS say that plaintiff was not promoted in October 1999 because she did not interview as well as other candidates. The only reference to interview performance made by a GBS employee was made as a general summary of the reasons plaintiff did not get either the October 1999 or August 2000 promotions. (See LeSieur Aff. ¶ 6.) Second, plaintiff contends that several of GBS's explanations are contradicted by an employee appraisal completed before the October 1999 promotion. The employee appraisal states only that plaintiff "Meets Standards" for a senior claims representative. (Wise Employee Appraisal of 6/8/99, Pl. Ex. 2, at 201.) Nowhere does the employee appraisal say plaintiff's performance is satisfactory for promotion or better than other senior claim representatives. Finally, plaintiff contends that Ms. LeSieur only told white employees about the October 1999 promotion and then lied about this fact in her deposition and affidavit. Plaintiff offers no evidence that Ms. LeSieur only told white employees of this opportunity.[6] A plaintiff cannot defeat a motion for summary judgment with unsupported

---

[6]Plaintiff cites to Ms. LeSieur's affidavit as proof that she advised white employees of the October 1999 promotion. (Pl. Opp'n at 3.) Nowhere in Ms. LeSieur's affidavit does it state that only GBS's white employees were advised of the promotional opportunity. In fact, the only reference to the advertisement of the promotional opportunity in Ms. LeSieur's affidavit states in its entirety: "The promotional opportunity in 1999 was not posted, but was discussed at staff meetings and I personally discussed it with Rose M. Wise before any decisions were made about whom to select. Rose M. Wise was considered for both promotional opportunities which are the subject of her lawsuit." (LeSieur Aff. ¶ 4.) Plaintiff also admits that she cannot remember whether she and Ms. LeSieur discussed the promotional opportunity. (Wise Dep. at 79.)

allegations.  Fed. R. Civ. P  56(e).

b.

With respect to the August 2000 promotion, plaintiff contends that Ms. LeSieur's

comment that plaintiff "was not going to be promoted if another job became available" is

indicative of racial animus and casts doubt on GBS's proffered explanations.  (Pl. Opp'n at 27.)

This argument fails.  Ms. LeSieur's comment is not indicative of racial animus on its face.

Moreover, plaintiff fails to show any surrounding circumstances that would suggest this

comment was racially motivated.  As a result, no rational jury could find that Ms. LeSieur's

comment was indicative of racial animus.

Plaintiff also argues that if GBS's explanations were true, it would not have even

considered plaintiff for the August 2000 promotion because plaintiff would not have been

qualified for the position.  (Id. at 28-29.)  This argument likewise fails.  The evidence shows that

GBS believed plaintiff was qualified for the promotion based on her technical experience and

knowledge of GBS procedures.  (See Mem. from Kramer to Snyder of 7/20/00, Pl. Ex. 7, at 3;

Mem. from Snyder to Neigel of 8/11/00, Pl. Ex. 8, at 1; Mem. from Snyder to Wise of 8/24/00,

Pl. Ex. 9, at 1.)  GBS denied plaintiff the promotion for entirely different reasons—audit scores,

interpersonal relationships, and proactivity.  (See Mem. from Snyder to Neigel of 8/11/00, Pl.

Ex. 8, at 1-2; Mem. from Snyder to Wise of 8/24/00, Pl. Ex. 9, at 1-2.)  Thus, GBS could have

found plaintiff qualified for the promotion and still denied the promotion for the reasons given.

Based on this evidence, no reasonable jury could find that GBS's explanations for denying

plaintiff the August 2000 promotion were false.

A separate order granting defendant's motion is being entered herewith.


Date: _October 30, 2002_                          _____
                                                  J. Frederick Motz
                                                  United States District Judge